IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| DERRELL B. WILLIAMS, #305-646 | : | |
| Plaintiff | : | |
| v. | : | Civil No. L-10-1479 |
| BOBBY P. SHEARIN, *WARDEN* | : | |
| Defendant | : | |

## MEMORANDUM

This civil rights Complaint was filed by Plaintiff, presently incarcerated at North Branch Correctional Institution (NBCI) on June 3, 2010, alleging that he was placed in general population despite informing corrections personnel that he had enemies there, and as a result was assaulted on December 2, 2009. He also states that following the assault he was assigned to administrative segregation but subjected to adjustment proceedings after he refused the housing assignment due to the presence on the tier of the very group of prisoners responsible for the assault. He complains that he remains housed at NBCI and seeks money damages for his injuries. ECF No. 1. Now pending is Defendant's unopposed[1] Motion to Dismiss or for Summary Judgment. ECF No. 12. For the reasons that follow, the Motion, construed as a Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, will be granted.

**I.    Background**

Plaintiff entered the Maryland Division of Correction on December 6, 2001. ECF No.

---

[1] Pursuant to the dictates of Roseboro v. Garrison, 528 F.2d. 309 (4th Cir. 1975), on September 30, 2010, Williams was placed on notice that he was entitled to file an opposition response, with materials in support thereof. ECF No. 13. No opposition response has been filed. Plaintiff has filed a cross-motion for summary judgment, entitled "Motion for Claims for Relief." ECF No. 14. The motion presents no new argument or evidence in support of his claim and is not relevant to the discussion herein.

12, Exhibit 1 at 6.  Over the course of several years he was transferred several times between two Jessup, Maryland prisons, the Maryland House of Correction (MHC) and the Maryland House of Correction Annex (MHC-X).  On October 27, 2005. Plaintiff was transferred from MHC-X to the Eastern Correctional Institution (ECI) in Westover, Maryland.  He remained at ECI until October 18, 2007, when he was transferred to the Maryland Correctional Institution at Hagerstown (MCI-H).  Several months later, on March 28, 2008, Plaintiff was transferred to Jessup Correctional Institution (JCI).  Id., Exhibit 1 at 2-6.

On August 6, 2008, Plaintiff was transferred to NBCI due to his involvement in gang activity while at MHC, ECI, MCI-H and JCI and his claim that he was the target of a "hit" if he remained on general population at JCI.  Id., Exhibit 2 at 10, Case Management Notes.  Plaintiff refused to attend an administrative segregation review on January 15, 2009; nonetheless, the classification team recommended he remain on administrative segregation pending further investigation.  Id.  Plaintiff attended a February 10, 2009, classification team review where he informed staff that he had enemies at NBCI, but refused to provide names.  Id., Exhibit 2 at 9-10.  Although the team recommended Plaintiff be assigned to general population, he was kept on administrative segregation pending transfer to WCI.  Plaintiff was advised of this recommendation on May 5, 2009, and transferred to WCI on May 19, 2009.  Id., Exhibit 2 at 7-8.

Plaintiff was placed on administrative segregation following his transfer to WCI.  During investigation of his housing status, Plaintiff claimed he would not be safe in general population because he was a former member and "enforcer" for the Black Gorilla Family (BGF) gang who had "dropped his flag" (given up gang membership), and thus was targeted for a "hit."  The investigator, Lt. M. Malloy, could not substantiate Plaintiff's status as a gang "enforcer" but did confirm that Plaintiff was a validated member of the gang.  Based on Plaintiff's statements

during an interview and other information uncovered during the investigation, Malloy concluded that Plaintiff had attempted to manipulate his housing assignment. Id., Exhibit 3 at 2-4. On August 28, 2009, case management staff recommended Plaintiff's transfer to NBCI. Id., Exhibit 3 at 1. The transfer, approved by the Assistant Warden, occurred on September 1, 2009. Id., Exhibit 2 at 5-6. On September 11, 2009, NBCI case managers assigned Plaintiff to job bank status and placed him on the academic waiting list. Id.

Plaintiff remained in general population until December 2, 2009, when he was struck in the head by an object that appeared to be a battery charger.[2] Id., Exhibits 5 and 5A at 14-15. Plaintiff did not identify his attacker. The superficial laceration on the back of his head was cleaned, a sutureless product was applied to the wound edges and a dressing applied, and Plaintiff was immediately placed on administrative segregation. Id., Exhibits 2 at 3-4, 5, 5A at 12-14, and 7. He remains on administrative segregation single-cell status at NBCI pending consideration of an application for Interstate Corrections Compact (ICC) transfer.[3] Id., Exhibit 2 at 3 and Exhibits 8-9.

## II    Standard of Review

A motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). In other words, if there clearly exist factual issues "that

---

[2] Plaintiff admits he did not file Administrative Remedy Procedure (ARP) complaints at any time concerning his fear of retaliation by BGF members if he were placed in general population. Given that prison officials were aware of his concerns, convened an internal investigation, and regularly met to review Plaintiff's classification and security status, Plaintiff's failure to exhaust administrative remedies through the ARP process will not defeat his ability to proceed in this forum.

[3] On May 9, 2010, Plaintiff received a notice of infraction when he refused to return to his cell after a shower. He pled guilty and received a reprimand, due to mitigating circumstances that included his fear of retaliation from the BGF and the possibility that he would be transferred under the ICC. Id., Exhibits 8-10.

properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate. Anderson, 477 U.S. at 250; see also Pulliam Inv. Co. v. Cameo Properties, 810 F.2d 1282, 1286 (4th Cir. 1987); Morrison v. Nissan Motor Co., 601 F.2d 139, 141 (4th Cir. 1979); Stevens v. Howard D. Johnson Co., 181 F.2d 390, 394 (4th Cir. 1950). The moving party bears the burden of showing that there is no genuine issue of material fact. See Fed. R. Civ. P. 56(c); Pulliam, 810 F.2d at 1286 (citing Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979)).

Deliberate indifference in the context of a prisoner failure-to-protect claim requires that a defendant "knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994); see also Parrish ex rel. Lee v. Cleveland, 372 F.3d 294, 302-303 (4th Cir. 2004); Rish v. Johnson, 131 F.3d 1092, 1096 (4th Cir. 1997). Under Fourth Circuit law, liability under the Farmer standard requires two showings. First, the evidence must show that the official in question subjectively recognized a substantial risk of harm. It is not enough that the officers should have recognized it; they actually must have perceived the risk. See Rich v. Bruce, 129 F.3d 336, 340 n. 2 (4th Cir.1997). Second, the evidence must show that the official in question subjectively recognized that his actions were "inappropriate in light of that risk." Id. As with the subjective awareness element, it is not enough that the official *should have* recognized that his actions were inappropriate; the official actually *must have* recognized that his actions were insufficient. See Brown v. Harris, 240 F.3d 383, 390-91 (4th Cir. 2001). Further, to state a claim for damages, the prisoner must show a serious physical injury. See De'Lonta v. Angelone, 330 F. 3d 630, 634 (4th Cir. 2003); see also Babcock v. White, 102 F.3d 267, 272-73 (7th Cir. 1996).

**III.     Analysis**

As a fundamental element of § 1983 liability, Plaintiff must show that Shearin was personally involved in the alleged deprivation of his constitutional rights. See Vinnedge v. Gibbs, 550 F.2d 926, 928-29 (4th Cir. 1997) (doctrine of respondeat superior does not apply to 42 U.S.C. § 1983 actions).  It remains uncontroverted that Warden Shearin had no direct involvement in Plaintiff's security arrangements.  That determination, however, does not end this Court's inquiry.  The uncontroverted evidence demonstrates that prison officials took reasonable steps to protect Plaintiff from possible threats by members of his former gang.  Indeed, as Plaintiff failed to identify his assailant, it is impossible to conclude that his December 2, 2009, injury was inflicted by a BGF member, was not a random act of violence, or resulted from conflict between Plaintiff and a prisoner not involved in gang activity.  Prison officials have repeatedly transferred Plaintiff and placed him in special housing in their attempt to keep him safe from the BGF, and are now contemplating his transfer to an out-of-state facility.  Their efforts continue despite the fact that Plaintiff has failed to fully cooperate by providing specific information as to his known enemies.  Nothing more is constitutionally required.

**IV.     Conclusion**

Accordingly, having found no failure to protect Plaintiff, the Defendants' Motion for Summary Judgment will be granted by separate order which follows.

December 10, 2010                                                    /s/
                                                                    _____
                                                                    Benson Everett Legg
                                                                    United States District Judge

5